CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 08 2019

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRIAN WISHNEFF & ASSOCIATES LLC, a Virginia limited liability company, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 7:19CV00190<br>)<br>) **MEMORANDUM OPINION** |
| v. | )<br>) By: Hon. Glen E. Conrad |
| DELSHAH DEVELOPMENT, INC., a New York corporation, | ) Senior United States District Judge<br>)<br>) |
| Defendant. | ) |

Brian Wishneff & Associates LLC ("Wishneff"), a Virginia limited liability company, filed this action for breach of contract and quantum meruit against Delshah Development, Inc. ("Delshah"), a New York corporation. Delshah has moved to dismiss the complaint on several grounds, including lack of personal jurisdiction. For the following reasons, the motion will be denied.

## Background

Wishneff provides tax credit consulting services to real estate developers across the United States. The limited liability company maintains offices in Roanoke and Arlington, Virginia, and each of its members is a Virginia resident. Delshah is a real estate development corporation based in New York City. Michael Shah is its president.

In 2015, Delshah and its affiliates were involved in several real estate development projects in New York City for which Delshah was interested in obtaining historic tax credits. Delshah learned about Wishneff from another entity, Higgins Quasebarth & Partners LLC ("Higgins Quasebarth"). Delshah initiated contact with Wishneff, either directly or through

Higgins Quasebarth. In August of 2015, Erik Wishneff ("Erik"), the plaintiff's vice president and general counsel, met with Shah at Delshah's New York office, where they discussed Wishneff's potential role as a tax credit consultant. At the end of the meeting, Shah asked Erik to send him a term sheet. Over the next several weeks, the parties negotiated a consulting agreement via telephone and email.

On September 30, 2015, Wishneff formally entered into the Delshah Development Tax Credit Agreement (the "Agreement") with Delshah Development or its assignee,[1] pursuant to which Wishneff agreed to assist the developer in obtaining historic tax credits to redevelop certain New York properties. The Agreement, which was prepared by Wishneff, describes the scope of consulting work to be performed and the agreed-upon fee arrangement. At Delshah's request, Wishneff agreed to include a New York choice-of-law clause. See Agreement 8, Dkt. No 11-2 ("The provisions of this Agreement shall be subject to and construed and enforced in accordance with the laws of the State of New York."). Wishneff also added the following waiver provision in a separate paragraph:

> 6. Waiver of Jury Trial. The parties to this agreement hereby waive trial by jury and waive any objection which they may have based on lack of jurisdiction or improper venue or *forum non conveniens* to the conduct of any action instituted hereunder, or arising out of or in connection with this agreement . . . .

Id. (capitalization omitted).[2] The Agreement identifies Wishneff as a "Virginia limited liability company located in Roanoke, Virginia," and requires that any notices be sent to its Roanoke office address. Id. at 2, 9.

---

[1] At the time of the Agreement, Delshah was not yet incorporated.

[2] Neither the choice-of-law clause nor the waiver provision specifies where a dispute arising from the Agreement must be brought.

2

Although the Agreement does not designate a place of performance, the record indicates that most of Wishneff's consulting services were performed from its offices in Virginia. According to a sworn affidavit from Erik, "the Defendant and its agents placed several hundred calls to Plaintiff's phone numbers in Virginia," during which Wishneff "educated Defendant on the details of the tax credit programs, including how to structure transactions . . . to maximize tax credit qualifications." Erik Aff. ¶ 10, Dkt. No. 15. Delshah also "called Plaintiff in Virginia for advice on marketing efforts for potential tax credit investors, including legal and financial structuring, due diligence, and closing calls with prospective investors . . . ." Id. In addition to communicating by telephone, "the Defendant and its agents sent thousands of e-mails to Plaintiff's servers in Virginia concerning all aspects of the project." Id. ¶ 12; see also Shah Decl. ¶ 16, Dkt. No. 11-1 (acknowledging that Shah and other Delshah employees engaged in a "substantial number of communications . . . with Erik Wishneff").

By letter from counsel dated January 22, 2019, Delshah notified Wishneff of its intention to terminate the Agreement (the "Termination Letter"). In the Termination Letter, which was sent by Federal Express to Wishneff's addresses in Roanoke and Arlington, Delshah asserted that "Wishneff failed to perform the duties as required by the agreement and breached its contract." Termination Ltr. 2, Dkt. No. 11-4. Based on Wishhneff's alleged "failure of consideration," Delshah further asserted that Wishneff was not entitled to be paid the fees contemplated under the Agreement, and that Delshah had no "desire for Wishneff to continue as a consultant to the project for future phases." Id.

One day later, on January 23, 2019, Delshah filed a summons with notice in New York state court against Wishneff.[3] The summons with notice described the "Nature of the Action" as follows:

> The nature of this action is a claim for money damages as well as declaratory relief relating to a "Tax Credit Agreement" dated September 30, 2015 ("Agreement"), all pertaining to real estate transactions in New York County, that the defendant breached the Agreement including the failure of consideration, that the Agreement has been terminated, and that plaintiff incurred damage in the amount of no less than $500,000.00, together with interest, contractual attorneys' fees, costs and disbursements of this action.

Summons with Notice 1, Dkt. No. 11-5.

Approximately four weeks later, on February 22, 2019, Wishneff filed the instant action in this court against Delshah. Wishneff claims that it substantially performed all of the services required under the Agreement and that Delshah breached the Agreement by failing to pay Wishneff for the services provided. Alternatively, Wishneff maintains that it is entitled to recover under a theory of quantum meruit.

On April 25, 2019, Delshah moved to dismiss the complaint on several grounds, including lack of personal jurisdiction. In support of the motion, Delshah submitted Shah's declaration and several exhibits. Thereafter, the court scheduled a hearing on the motion and adopted the adjusted briefing schedule agreed to by the parties. On May 22, 2019, Wishneff filed a brief in opposition to the motion to dismiss, along with a sworn affidavit from Erik. The court held a hearing on the motion on July 15, 2019.

---

[3] In New York state courts, a plaintiff commences a lawsuit "by filing a summons and complaint or a summons with notice." N.Y.C.P.L.R. § 304(a). "A party may elect to file a summons with notice if the party is not prepared to serve the complaint; in that case, the summons must put the defendant on notice of the 'nature of the action and the relief sought,' as well as 'the sum of money' for which judgment may be taken in case of default.'" Lehman XS Trust, Series 2006-GP2 v. GreenPoint Mortg. Funding, Inc., 916 F.3d 116, 119 n.2 (2d Cir. 2019) (quoting N.Y.C.P.L.R. § 305(b)).

Following the hearing, the defendant submitted the complaint filed in New York state court as a supplemental exhibit. The exhibit indicates that the complaint was filed on July 16, 2019, nearly seven months after Delshah filed its summons with notice.

## Discussion

In the pending motion, Delshah primarily argues that the complaint is subject to dismissal for lack of personal jurisdiction. In the alternative, Delshah contends that the complaint should be dismissed under the prior-pending-action doctrine or the Colorado River[4] abstention doctrine. The court will address each argument in turn.

### I. Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. Under this rule, "a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such challenge." Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016). "The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." Id. at 268. For instance, "when the parties have not yet had a fair opportunity to develop and present the relevant jurisdictional evidence," plaintiffs need only make a prima facie showing of personal jurisdiction. Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018). However, "when, as here, the court does not preclude the parties from pursuing jurisdictional discovery, and holds a hearing at which the parties may present relevant evidence and legal arguments based on a developed record, plaintiffs will be held to the burden of establishing personal jurisdiction by a preponderance of the evidence." Id. at 197.

---

[4] See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

A district court can assert personal jurisdiction over a nonresident defendant only if: (1) the forum state's long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). The United States Court of Appeals for the Fourth Circuit has recognized that "Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause." Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002). Consequently, "'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquires essentially become one.'" Id. (quoting Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135–36 (4th Cir. 1996)).

The Due Process Clause requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). This requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Depending on the nature of a defendant's contacts with the forum state, a court may exercise general or specific jurisdiction. General jurisdiction exists when a defendant's affiliations with a forum state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Bristol-Myers Squibb Co.

v. Superior Court, 137 S. Ct. 1773, 1780 (2017). Specific jurisdiction, on the other hand, is dependent "on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citation omitted). In order for the exercise of specific jurisdiction to comport with due process, "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Bristol-Myers Squibb, 137 S. Ct. at 1780 (emphasis in original) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Id. (alteration in original omitted) (internal quotation marks and citation omitted). Consistent with the parties' briefs, the court will focus its analysis on whether Wishneff has demonstrated that Delshah's contacts with Virginia are sufficient to confer specific jurisdiction.[5]

"For a court to have specific personal jurisdiction over a defendant, the defendant must have 'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (2016) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). The Fourth Circuit "has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). Under this test, the court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Tire Eng'g & Distrib., LLC v. Shandong Linglong

---

[5] Wishneff acknowledges in its brief in opposition to the defendant's motion that "the focus here should be on specific jurisdiction." Pl.'s Br. Opp'n 4, Dkt. No. 15.

7

Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012). "The plaintiff must prevail on each prong." Perdue Foods, 814 F.3d at 189.

A. **Purposeful Availment**

The first prong, purposeful availment, "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." Consulting Eng'rs Corp., 561 F.3d at 278. "While this requirement is not susceptible of mechanical application, courts have considered various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment." Id. In the business context, these factors include, but are not limited to, the following:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

Sneha Media & Entm't, 911 F.3d at 198–99 (citing Consulting Eng'rs Corp., 561 F.3d at 278).

Although the foregoing factors are helpful in evaluating the purposeful-availment prong of the due process test, the assessment "does not end with a mere survey of the box score." Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A., 92 F. Supp. 3d 435, 441 (E.D. Va. 2015). In other words, "a court does not determine purposeful availment simply based upon which party has more factors in its favor or the quantity of defendant's contacts." Id.; see also Carefirst, 334 F.3d at 397 (explaining that courts "should not merely . . . count the contacts and

8

quantitatively compare [a] case to other preceding cases"). Instead, the court's analysis "proceeds on a case-by-case basis," taking into consideration the "qualitative nature of each of the defendant's connections to the forum state." Tire Eng'g, 682 F.3d at 302. "In that vein, a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal acts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum." Id.; see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 293 (4th Cir. 2009) ("Our precedent recognizes that a district court's exercise of personal jurisdiction over a particular defendant may rest upon limited contacts with the forum state, so long as due process is not offended.").

After considering the evidence adduced in the instant case, the court finds that Wishneff has met its burden of proving that Delshah purposely availed itself of the privilege of conducting activities in the Commonwealth of Virginia. First and foremost, the evidence establishes that it was Delshah who initiated contact with Wishneff in Virginia, either directly or through Higgins Quasebarth. Under existing precedent, this factor is entitled to "special weight." See CFA Inst., 551 F.3d at 295 & n.17; see also Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 682 (M.D.N.C. 2011) ("[T]he Fourth Circuit has given great weight to the question of who initiated the contact between the parties.") (internal quotation marks and citations omitted). Second, the evidence establishes that after an initial meeting in New York, the parties negotiated the Agreement at issue in this case through communications between Delshah in New York and Wishneff in Virginia. See Shah Decl. ¶ 9 ("I requested Erik Wishneff to send me a term sheet."); Erik Aff. ¶ 11 ("[T]he Agreement was negotiated through phone calls and e-mails between Defendant in New York and Plaintiff in Virginia."). Third, the record reflects that Wishneff performed many of its consulting obligations from its offices in Virginia.

9

Although the Agreement did not specify a place of performance, the court finds that Delshah "should have expected" that at least some of Wishneff's consulting work would be performed here. Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001); see also Pan-American Prods., 825 F. Supp. 2d at 683 ("[K]nowledge that a plaintiff will perform work in a forum may satisfy the purposeful availment requirement in combination with other factors.") (citing English & Smith v. Metzger, 901 F.2d 36, 39–40 (4th Cir. 1990)). The Agreement specifically identified Wishneff as a "Virginia limited liability company located in Roanoke," and the scope of work described in the Agreement included tasks that could be performed from Wishneff's Virginia offices. See, e.g., Agreement 4 (requiring Wishneff to "draft a variety of documents" and "review the initial drafts" of a cost certification audit; id. at 5 (requiring Wishneff to "prepare informational packets" and "review draft documents"). Finally, during the course of their more than three-year contractual relationship, the parties frequently "exchanged . . . telephone calls and written communications" on matters related to the Agreement. English & Smith, 901 F.2d at 39. Such communications included a substantial number of calls placed to Wishneff's phone numbers in Virginia, as well as the Termination Letter of January 22, 2019, which was mailed to Wishneff's offices in Roanoke and Arlington.

Based on the foregoing contacts, the court is convinced that Delshah should have "reasonably anticipate[d] being haled into court in [Virginia]" on claims related to the Agreement. Tire Eng'g, 682 F.3d at 305 (alterations in original) (internal quotation marks and citation omitted). In reaching this decision, the court recognizes that Delshah did not maintain offices, agents, or property in Virginia; that Delshah did not conduct in-person meetings with Wishneff or anyone else in Virginia; and that the parties agreed that New York law would

govern any contractual disputes.[6] While such factors are relevant to the purposeful-availment analysis, the court does not believe that they preclude the exercise of personal jurisdiction in the instant case. Courts have recognized that a choice-of-law clause "is not dispositive of the issue of specific personal jurisdiction." Pervasive Software, Inc. v. Lexware GMBH & Co. KG, 688 F.3d 214, 223 (5th Cir. 2012). Neither is a defendant's "lack of physical presence." English & Smith, 901 F.2d at 39. Indeed, "the Supreme Court has made it clear that . . . 'jurisdiction . . . may not be avoided merely because the defendant did not <u>physically</u> enter the forum State.'" Id. (emphasis in original) (quoting Burger King, 471 U.S. at 476); see also Walden, 571 U.S. at 285 (noting that "physical presence in the forum is not a prerequisite to jurisdiction," but "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact").

In sum, viewing all of Delshah's relevant contacts as a whole, the court concludes that Wishneff has met its burden of establishing that Delshah purposely availed itself of the privilege of conducting activities in the forum state. Delshah's contacts with Virginia were not so "random, fortuitous, or attenuated" that it would offend due process to subject Delshah to suit here. Burger King, 471 U.S. at 475 (internal quotation marks omitted).

B. **Relatedness**

The second prong of the test for specific jurisdiction focuses on whether the plaintiff's claims "arise out of the activities directed at the forum." Consulting Eng'rs Corp., 561 F.3d at 278. "The analysis here is generally not complicated." Tire Eng'g, 682 F.3d at 303. A

---

[6] As noted above, the provision of the Agreement specifying that it "shall be subject to and construed and enforced in accordance with the laws of the State of New York" is a choice-of-law clause, rather than a forum-selection provision. Neither that clause nor the subsequent waiver provision designates a particular forum for disputes arising from the Agreement. See, e.g., G&G LLC v. White, 535 F. Supp. 2d 452, 461 (D. Del. 2009) ("[T]he merger agreement does not contain a forum selection clause; instead, it holds a choice of law provision. Specifically, paragraph 4.7 of the merger agreement provides: 'Governing Law. This Agreement shall in all respects be construed, interpreted and enforced in accordance with and governed by the laws of the State of Delaware . . . .'") (citations omitted).

plaintiff's claims have been found to arise from activities directed at the forum where: (1) "activity in the forum state is 'the genesis of [the] dispute'"; or (2) "substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim[s]." Id. (quoting CFA Inst., 551 F.3d at 295).

Here, Wishneff's causes of action for breach of contract and quantum meruit clearly arise from Delshah's forum-related activities. Wishneff claims that Delshah breached the Agreement that was formed after Delshah initiated contact with the Virginia limited liability company, that Delshah improperly attempted to terminate the Agreement by sending a letter to Wishneff's Virginia offices, and that Wishneff is entitled to compensation for services performed in Virginia on Delshah's behalf. Based on the evidence presented, the second prong is clearly satisfied here.

### C. Reasonableness

The final prong of the three-part inquiry requires the court to determine whether the exercise of personal jurisdiction would be constitutionally reasonable. This prong "protects a party from litigation so gravely difficult and inconvenient that [the] party unfairly is at a severe disadvantage in comparison to [its] opponent." ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 392 (4th Cir. 2012) (alterations in original) (internal quotation marks omitted). Factors relevant to this inquiry include: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Consulting Eng'rs Corp., 561 F.3d at 279.

After considering all of the relevant factors, the court concludes that the exercise of jurisdiction would comport with "fair play and substantial justice." Burger King, 471 U.S. at

486 (internal quotation marks omitted). Although Virginia may be less convenient for Delshah than a New York forum, the court has no reason to believe that the burden of litigating here is "so great as to make unfair on that basis alone the exercise of jurisdiction." First Am. First, Inc. v. Nat'l Assoc. of Bank Women, 802 F.2d 1511, 1517 (4th Cir. 1986); see also World-Wide Volkswagen, 444 U.S. at 294 (recognizing over thirty years ago that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome"); CFA Inst., 551 F.3d at 296 (acknowledging that the defendant's location in India "may present unique challenges" but nonetheless determining that its ability to secure counsel in the forum state and its choice to do business with a forum resident indicated that defending the suit would not be particularly burdensome). When the burden upon Delshah is weighed against the other factors set forth above, it cannot be said that the exercise of personal jurisdiction would be constitutionally unreasonable. The Fourth Circuit has recognized that "Virginia has a strong interest in 'providing effective means of redress for its residents,'" including a "principally local business operation." First Am. First, Inc., 802 F.2d at 1517 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). Moreover, Wishneff has an "obvious interest in litigating in [its] home state." Id. Finally, federal courts regularly apply state law in diversity cases, and this court will have no difficulty applying New York law as appropriate.

In sum, after weighing all of the relevant factors, the court is convinced that the exercise of personal jurisdiction over Delshah would be constitutionally reasonable. This is simply not a case in which the interests of the plaintiff and Virginia are so attenuated that they are outweighed by the burden of subjecting the defendant to litigation within the Commonwealth. The court

therefore concludes that it may properly exercise specific jurisdiction over Delshah, and that Delshah's motion to dismiss for lack of personal jurisdiction must be denied.[7]

## II. Prior-Pending-Action Doctrine

Delshah next argues that dismissal is warranted under the prior-pending-action doctrine, since it filed suit first in New York state court. Even assuming that the doctrine applies when similar actions are pending in state and federal court, the court concludes that the doctrine should not bar the proceedings here.[8]

The prior-pending-action doctrine "provides generally that 'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances giving priority to the second.'" Gibbs & Hill, Inc. v. Harbert Int'l, Inc., 745 F. Supp. 993, 996 (N.D.N.Y. 1990) (quoting First City Nat'l Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)). Courts have emphasized that the doctrine is "'not to be applied in a mechanical way, regardless of other considerations.'" Id. (quoting Brierwood Shoe Corp. v. Sears, Roebuck & Co., 479 F. Supp. 563, 568 (S.D.N.Y. 1979)). "Considerations that have been found to render the rule inapplicable include those situations in which priority of filing was gained by winning a 'race to the courthouse,' as is frequently the case when the first-filed suit is a declaratory judgment action filed in anticipation

---

[7] Having concluded that the court may properly exercise specific jurisdiction over Delshah, the court need not address whether Delshah waived any objection to personal jurisdiction.

[8] In support of the pending motion, Delshah cites cases from the District of Massachusetts in which the prior-pending-action rule was applied where a state court action was filed first. See Qutab v. Kyani, Inc., 324 F. Supp. 3d 243 (D. Mass. 2018); Quality One Wireless, LLC v. Goldie Grp., LLC, 37 F. Supp. 3d 536 (D. Mass. 2014). However, several courts have held that "the prior pending action doctrine applies only where the relevant actions are both proceeding in federal courts." Williams v. Bayview Loan Servicing, LLC, No. 1:14-cv-07427, 2016 U.S. Dist. LEXIS 7760, at *6 (E.D.N.Y. Jan. 22, 2016) (citations omitted); see also Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C., 259 F. Supp. 2d 172, 177–78 (D. Conn. 2003) ("[T]he defendants argue that this action should be dismissed due to the presence of a prior pending action in the New York Supreme Court. The defendants' argument ignores the well-established federal rule that the 'pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'") (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

14

of the later-filed action." Id. (citations omitted); see also Samsung Elecs. Co. v. Rambus Inc., 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) (noting that "the first-to-file rule loses much of its force" if "the circumstances suggest a race to the courthouse"). Courts also consider the chronology of the filings and how far each case has progressed. Harris v. McDonnell, No. 5:13-cv-00077, 2013 U.S. Dist. LEXIS 150330, at *12–13 (W.D. Va. Oct. 18, 2013).

Having considered the relevant factors, the court declines to dismiss this case pursuant to the prior-pending-action doctrine. First, the circumstances surrounding the filing of the state court action are suggestive of a race to the courthouse. Delshah commenced the action by filing a summons with notice on January 23, 2019, one day after Delshah notified Wishneff of its intent to terminate the Agreement. Second, the chronology of the parties' filings weighs against the application of the doctrine. "Courts within the Fourth Circuit have held that a rigid application of the first-to-file rule is unwarranted when the second action was filed only weeks after the first action." Harris, 2013 U.S. Dist. LEXIS 150330, at * 12. That is precisely what happened here. Finally, the New York action has not advanced any further than the instant action. Instead, the record indicates that complaint was not filed until July 16, 2019, nearly seven months after the complaint was filed in the instant action. For all of these reasons, the court concludes that dismissal is not warranted under the prior-pending-action doctrine.

### III. Abstention

Finally, Delshah argues that the complaint should be dismissed under the Colorado River abstention doctrine. Once again, the court is unpersuaded.

"In Colorado River, the Supreme Court held that a federal court may abstain from deciding non-frivolous nondeclaratory claims in favor of a parallel state suit for reasons of 'wise judicial administration'—but only in 'exceptional circumstances.'" vonRosenberg v. Lawrence,

15

781 F.3d 731, 734 (4th Cir. 2015) (quoting Colorado River, 424 U.S. at 818). In reaching its decision, the Court emphasized that a pending action in state court is generally "no bar to proceedings concerning the same manner in the Federal court having jurisdiction," and that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817. In light of this obligation, the Court explained that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention" under other doctrines. Id. Thus, the Colorado River abstention doctrine must be "applied parsimoniously," and courts must "remain mindful that this form of abstention is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 463 (4th Cir. 2005).

In deciding whether to abstain under Colorado River, the court must balance several factors, "with the balance heavily weighted in favor of the exercise of [federal] jurisdiction." Moses H. Cone Mem'l Hosp., 460 U.S. at 16. "Although the prescribed analysis is not a 'hard-and-fast' one in which application of a 'checklist' dictates the outcome, six factors have been identified to guide the analysis." Chase Brexton, 411 F.3d at 463 (citations omitted). Those factors are as follows:

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

Id. at 463–64. Ultimately, however, "abstention should be the exception, not the rule," and "a district court must remain mindful that . . . 'abdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" Id. (quoting Colorado River, 424 U.S. at 813).

With respect to the first factor identified in Chase Brexton, the parties agree that no res or property is involved over which the New York court has asserted jurisdiction. Accordingly, this factor weighs against abstention. Gannett Co. v. Clark Constr. Grp., Inc., 286 F.3d 737, 747 (4th Cir. 2002).

The court finds that the second factor, whether the federal forum is an inconvenient one, is neutral. Although Delshah and its witnesses reside in New York, and its documentary evidence is located there, the same reasons make the New York forum less convenient for Wishneff and its witnesses in Virginia.

Delshah argues that the third factor, the desirability of avoiding piecemeal litigation, clearly weighs in favor of abstention. However, the court disagrees. In Colorado River, the Supreme Court made clear that the "mere potential for conflict in the results of the adjudications, does not, without more, warrant staying [the] exercise of federal jurisdiction." 426 U.S. at 816. Likewise, the Fourth Circuit has recognized that "there is nothing in the nature of breach of contract actions that renders the fact of duplicative proceedings exceptionally problematic." Gannett Co., 286 F.3d at 746. Consequently, the court is unable to find that the third factor weighs in favor of abstention. See id. (holding that "the district court abused its discretion by determining that the possibility of piecemeal litigation weighs in favor of abstention"); see also MidAtlantic Int'l, Inc. v. AGC Flat Glass N. Am., Inc., 497 F. App'x 279, 283 (4th Cir. 2012)

17

(holding that the potential "res judicata problems" cited by the district court were "not the threat with which Colorado River was concerned," and that the district court therefore "erred when it determined that [the third] factor weighed in favor of abstention").

The court must also reject Delshah's argument that the fourth factor, the order in which the courts obtained jurisdiction, favors abstention. The Supreme Court has explained that this factor is not "measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21. As discussed above, the litigation in New York state court is not any further along than the instant action. Accordingly, the fourth factor does not counsel in favor of abstention. MidAtlantic Int'l, 497 F. App'x at 283.

Finally, the court is of the opinion that the fifth factor, whether state law or federal law provides the rule of decision on the merits, and the sixth factor, assessing the adequacy of the state proceeding to protect the parties' rights, do not weigh in favor of abstention. "[T]he Supreme Court has made clear that the presence of state law and the adequacy of state proceedings can be used only in 'rare circumstances' to justify Colorado River abstention." Gannett Co., 286 F.3d at 746 (citing Moses H. Cone, 460 U.S. at 26). Such circumstances are not present here. The mere fact that New York state law is implicated in this action does not weigh in favor of abstention. Id. "[I]n a diversity case, such as this one, federal courts regularly grapple with questions of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." Id. Moreover, this is not a case in which "retention of jurisdiction would create needless friction with important state policies." Id. (internal quotation marks and citation omitted).

In sum, no factor or combination of factors in this case overcomes the "heavily weighted" balance in favor of retaining jurisdiction. Moses H. Cone, 460 U.S. at 15. Accordingly, dismissal is not warranted under the Colorado River abstention doctrine.

## Conclusion

For the reasons set forth above, Delshah's motion to dismiss will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 8th day of November, 2019.

_____
Senior United States District Judge